**Kendall Q. NORTHERN, Plaintiff and Petitioner,**

v.

**N. Eldon BARNES, Warden, Utah State Prison, and Department of Corrections through Board of Pardons, Defendants and Respondents.**

**No. 920116.**

Supreme Court of Utah.

Dec. 10, 1993.

Jo Carol Nesset–Sale, Salt Lake City, for plaintiff and petitioner.

R. Paul Van Dam, Att'y Gen., Kirk M. Torgensen, James H. Beadles, Lorenzo Miller, Asst. Att'ys Gen., Salt Lake City, for defendants and respondents.

ZIMMERMAN, Justice:

Kendall Northern seeks review of a Utah Court of Appeals decision affirming the district court's denial of his petition for a writ of habeas corpus. 825 P.2d 696. Northern contends that he was deprived of his due process rights as a result of the events surrounding the Board of Pardons' rescission of his release date. We affirm the dismissal of his petition.

In 1980, Northern pleaded guilty to second degree murder and aggravated robbery for his participation in robbing and killing a cab driver. Northern was sentenced to serve two consecutive five-to-life terms at the Utah State Prison. In 1981, following an initial

hearing, the Board of Pardons issued a written order assigning Northern a release date of May 10, 1988. The order contained a provision revoking the release date if Northern violated the rules and regulations of the Utah State Prison or any state laws.

During the summer of 1984, the Board received information from officials at the Utah State Prison that Northern had used illegal drugs during the first two years of his incarceration. Nevertheless, on consideration of Northern's incarceration status pursuant to his written request, the Board determined that Northern's release date of May 10, 1988, should remain intact.

In 1986, the Utah Department of Corrections transferred Northern to the Duchesne County Jail. While there, only a few months before his release date, jail authorities discovered Northern had recently used marijuana. This information was reported to officials at the Utah State Prison and was received by the Board prior to his release date. The Board then requested that Northern undergo a psychological assessment. The Board, however, did not receive the results of the assessment until May 5, 1988, five days before Northern's scheduled release date. The report indicated that Northern had been a heavy drug user and had been unable to deal with life's stresses without the use of illegal substances. The report also stated that Northern viewed his drug dependency as a major factor in his antisocial behavior.

On May 9, 1988, the Board rescinded Northern's May 10th release date. The Board continued the matter pending a second psychological evaluation and a complete prison progress report. Northern was notified that the Board would hold a review hearing on July 8, 1988. He appeared at the hearing and was permitted to present information, respond to questioning, and address the Board. At the conclusion of the hearing, the Board affirmed the rescission of Northern's original release date, stating that it was concerned about the risk he presented to society. The Board indicated that it had considered information received since the original hearing. The Board scheduled a rehearing for May 1990, and Northern was returned to the Duchesne County Jail.

In October 1988, Northern escaped from the jail, and the Board consequently revoked the May 1990 rehearing date. In 1989, authorities apprehended Northern in Canada and returned him to prison.

On March 30, 1990, Northern petitioned for a writ of habeas corpus or, in the alternative, a writ of mandamus or declaratory judgment. The petition prayed for (i) declaratory relief as to the unlawfulness of Northern's confinement since his release date of May 10, 1988; (ii) an order mandating his immediate release; and (iii) damages in excess of $10,-000 for "breach of contract" on the ground that his release date created a legally binding agreement on the State. Following a hearing, the trial court denied Northern's petition, finding that the Board had received new evidence, including Northern's drug use in prison, which justified the rescission of his release date.

Northern appealed the decision. The Utah Court of Appeals affirmed. Northern subsequently was released on July 9, 1991. As a condition of that release, the Board required Northern to pay $26,350 in restitution. Northern sought certiorari review of the Court of Appeals' decision. We granted the writ to consider whether Northern's procedural and substantive due process rights were violated when, inter alia, the Board rescinded his release date of May 10, 1988, without the benefit of a hearing.

■ We first address the standard of review. When reviewing an appeal from a dismissal of a habeas corpus petition, "we survey the record in the light most favorable to the findings and judgment; and we will not reverse if there is a reasonable basis therein to support the trial court's refusal to be convinced that the writ should be granted." *Medina v. Cook*, 779 P.2d 658, 658 (Utah 1989) (quoting *Bundy v. DeLand*, 763 P.2d 803, 805 (Utah 1988)).

■ We have made it clear that a habeas corpus review of the Board's actions is available under certain circumstances. *Foote v. Board of Pardons*, 808 P.2d 734, 735 (Utah 1991) ("It is the province of the judiciary to assure that a claim of the denial of due process by an arm of government be heard

and, if justified, that it be vindicated."). Nevertheless, we do not reach Northern's due process arguments because we find that the Board lawfully revoked its release order when it discovered that Northern had used marijuana in violation of the rules and regulations of the Utah State Prison as well as the laws of Utah.

Any entitlement Northern had to a release from prison on the original May 10, 1988, date was conditioned on his compliance with the terms of the order setting that date. The order stated in part:

> [I]n the event the above named applicant shall be guilty of any infractions of the rules and regulations of the Utah State Prison ... or is found to be in violation of any other law of the State of Utah prior to the effective date of said parole, then the Order of Parole or Termination of Sentence is revoked and becomes null and void.

It is undisputed that Northern violated Utah law while incarcerated.[1] He used illegal drugs on two occasions. Furthermore, he freely admitted using marijuana on the second occasion, which occurred only a few months before his scheduled release date. The Board received this information and rescinded Northern's release date. The Board was entitled to take this action under the express terms of the release agreement.

Northern's violation of the release agreement operated to forfeit any entitlement he had in his release date. Affirmed.

HALL, C.J., HOWE, A.C.J., and STEWART and DURHAM, JJ., concur.

---

1. Northern's use of marijuana violates section 58–37–8(2)(a)(i) of the Utah Code, which states in part that it is unlawful "for any person knowingly and intentionally to possess or use a controlled substance." Marijuana is listed as a controlled substance under section 58–37–4.